## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | |
| G. YVONNE STEPHENS<br>LARRY K. ALEXANDER, | BKY Nos. 98-34858 and 98-33694<br>Adv. No. 04-3468 (DDO) |
| Debtors. | |
| MARY JO A. JENSEN-CARTER, Trustee of the Bankruptcy Estate of Larry Alexander, | Civil No. 11-3459 (JRT/AJB)<br>Civil No. 11-2661 (JRT/AJB) |
| Plaintiff, | |
| v. | |
| JOHN A. HEDBACK, Trustee of the Bankruptcy Estate of G. Yvonne Stephens; LARRY K. ALEXANDER; GEORGINA YVONNE STEPHENS, JOHN DOE; and JANE DOE, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ANDREW WILL ALEXANDER and
GEORGINA YVONNE STEPHENS,

                                       Appellants.

v.

MARY JO A. JENSEN, Trustee of the
Bankruptcy Estate of Larry Alexander; and
JOHN A. HEDBACK, Trustee of the
Bankruptcy Estate of G. Yvonne Stephens,

                                       Appellees.

Michael J. Iannacone, III and Mary F. Ahrens, **IANNACONE LAW OFFICE**, 8687 Eagle Point Boulevard, Lake Elmo, MN 55042, for Mary Jo A. Jensen-Carter.

John A. Hedback, **HEDBACK ARENDT KOHL & CARLSON**, 2855 Anthony Lane South, Suite 201, Saint Anthony, MN 55418, *pro se*.

Daniel L.M. Kennedy, **KENNEDY LAW GROUP PLLC**, 4103 East Lake Street, Minneapolis, MN 55406, for Andrew Will Alexander and Georgina Yvonne Stephens.

Larry K. Alexander, pro se.

This litigation – now in its fourteenth year – is over the ownership and possession of 875 Laurel Avenue, St. Paul, Minnesota ("875 Laurel"). The case initiated in 1998 with two bankruptcy cases by then-spouses, Larry Alexander ("Alexander") and Georgina Yvonne Stephens. Since then the parties have visited, on numerous occasions, the state court, the Bankruptcy Court, this Court, the Bankruptcy Appellate Panel of the Eighth Circuit, and the Court of Appeals for the Eighth Circuit. The federal courts have repeatedly determined that the bankruptcy estates own 875 Laurel. Stephens and her son, Andrew Will Alexander ("Andrew"), again contest that determination.

The matter is before the Court on the appeal of United States Bankruptcy Judge Dennis D. O'Brien's August 31, 2011 order granting possession of 875 Laurel to the trustees of the bankruptcy estates, Mary Jo Jensen-Carter and John Hedback. The Bankruptcy Court further ordered Alexander and Stephens and any other persons to vacate 875 Laurel. Andrew appealed, and on September 15, 2011, Judge David S. Doty declined to stay the order of the Bankruptcy Court. Stephens and Andrew brought a second appeal,[1] asserting a variety of theories that the Bankruptcy Court lacked

---

[1] Andrew appealed first. (No. 11-2661.) Stephens first filed a motion to vacate and a motion for amended findings in the Bankruptcy Court. After the Bankruptcy Court judge denied both motions, Stephens and Andrew brought another appeal. (No. 11-3459.)

jurisdiction or authority. The Court will affirm the order of the Bankruptcy Court because the Bankruptcy Court had jurisdiction and authority to issue the appealed order and the courts in this district have repeatedly addressed Stephens's claim, holding that she has no possessory interest. Because Andrew does not have standing to appeal the order of the Bankruptcy Court, his claims will be dismissed.

## BACKGROUND

In June 1998, Larry Alexander filed a Chapter 13 petition (later converted to Chapter 7) in this District's Bankruptcy Court. *In re Alexander*, No. 98-33694 (Bankr. D. Minn., filed June 18, 1998). Mary Jo Jensen-Carter is the trustee of Alexander's bankruptcy estate. Alexander's wife, Georgina Yvonne Stephens, filed her own bankruptcy petition in August 1998. *In re Stephens*, No. 98-34858 (Bankr. D. Minn. filed Aug. 17, 1998). John Hedback is the trustee of Stephens's bankruptcy estate. An unending stream of cases has followed the original petitions, and 875 Laurel is the focus of each.



The history of the case is well summarized in *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Jan. 4, 2006). For the purposes of this appeal, a few key events[2] include:

- In 1998 both Alexander and Stephens filed for bankruptcy. Alexander claimed 875 Laurel as exempted property; Stephens did not. Stephens originally indicated that she paid monthly rent to Alexander for 875 Laurel and verified under oath that Alexander is the exclusive owner of the property.

- Beginning in 2001, Alexander and Stephens litigated with Jensen-Carter on the issue of Stephens's right to an exemption of 875 Laurel in Alexander's bankruptcy case. In 2001, Jensen-Carter initiated an eviction action in Ramsey County District Court. During this litigation (in 2002), Stephens asserted for the first time that Alexander had conveyed 875 Laurel to her and Andrew, as joint tenants, by an unrecorded quitclaim deed on March 15, 1998.

- The quitclaim deed was recorded on June 30, 2003.

A chart of all of the relevant orders is attached as Appendix 1. The key orders for the purposes of this appeal are as follows:

- *Jensen-Carter v. Stephens*, No. C8-01-4968 (Minn. Dist. Ct. Jan. 27, 2004).
  Jensen-Carter brought an unlawful detainer action against Stephens. The court found that Stephens had a homestead interest in 875 Laurel and that she was entitled to immediate possession.

- *Stephens v. Jensen-Carter*, Nos. 01-633 and 05-33, 2005 WL 852446 (D. Minn. Apr. 11, 2005) (Magnuson, J.).
  Stephens brought a motion for summary judgment, alleging that any further federal action was barred by res judicata, the statute of limitations, and the *Rooker-Feldman* doctrine. Judge Magnuson denied summary judgment and referred all remaining issues to the Bankruptcy Court.

- *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Jan. 4, 2006).

---

[2] These facts are excerpted from *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Jan. 4, 2006).

    Judge O'Brien granted partial summary judgment to Jensen-Carter and declared that neither Stephens nor Alexander had properly claimed an exemption in or had an ownership interest in 875 Laurel. The order also authorized Jensen-Carter to sell the property.

- *Stephens v. Jensen-Carter*, Nos. 06-693 and 06-2327, 2007 WL 2885813 (D. Minn. Sept. 27, 2007) (Schiltz, J.), *aff'd*, *Stephens v. Hedback*, 321 Fed. App'x 536 (8th Cir. Apr. 21, 2009).
Judge Schiltz affirmed the January 2006 order of the Bankruptcy Court and placed filing restrictions on Alexander and Stephens.

    *In re Stephens, In re Alexander*, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Dec. 17, 2009). Judge O'Brien approved a settlement between the two bankruptcy estates. Both the bankruptcy appellate panel and Eighth Circuit affirmed. *Alexander v. Hedback*, 395 Fed. App'x 314 (8th Cir. Oct. 6, 2010); *In re Stephens*, 425 B.R. 529 (B.A.P. 8th Cir. Mar. 12, 2010).

- *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Aug. 31, 2011). Judge O'Brien ordered the eviction of Stephens and Alexander from 875 Laurel.

    *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Oct. 12, 2011). Judge O'Brien denied Stephens's motion to vacate the Aug. 31, 2011 order and motion for amended findings.

Appellants, Stephens and Andrew, appeal from the August 31, 2011 order of the Bankruptcy Court.[3]

## ANALYSIS

### I. STANDARD OF REVIEW

    In bankruptcy proceedings, the district court sits as an appellate court and applies the same standard of review as the court of appeals. *Reynolds v. Pa. Higher Educ.*

---

[3] In addition, Andrew has initiated a civil rights action in federal court (currently before Judge Montgomery) against Hedback; Jensen-Carter; the City of St. Paul; and Sharon Lubinski, United States Marshal. *Alexander v. Hedback*, No. 11-3590 (D. Minn, filed Dec. 12, 2011).

*Assistance Agency*, 425 F.3d 526, 531 (8th Cir. 2005).  This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*.  *Id.*  "A finding is clearly erroneous when although there is evidence to support it[,] the reviewing court is left with the definite and firm conviction that a mistake has been committed."  *DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006) (internal quotation marks, citation, and alteration omitted).

## II.  ANDREW'S STANDING AND SUBJECT MATTER JURISDICTION

Neither party raises the issue of standing, but if Andrew does not have standing, then this Court does not have jurisdiction to decide the issues he raises on appeal.  Fed. R. Civ. P. 12(h)(3); *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) ("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction.").  Ordinarily, a non-party may have standing to appeal an order if he can show "some basis for arguing that the challenged action causes him a cognizable injury."  *In re Marlar*, 252 B.R. 743, 748 (B.A.P. 8th Cir. 2000) (internal quotation marks and citation omitted), *aff'd*, 267 F.3d 749 (8th Cir. 2001).  In order to have standing to appeal the decision of the Bankruptcy Court, "an appellant must be a person aggrieved."  *In re Zahn*, 526 F.3d 1140, 1142 (8th Cir. 2008) (quotation marks omitted).  To be a person aggrieved, an "appellant[] must have been directly and adversely affected pecuniarily by the order."  *In re Marlar*, 252 B.R. at 748 (quoting *Fidelity Bank Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)).  Whether Andrew is a "person aggrieved" is a question of fact.  *Id.* at 749.

"Generally, those who were not parties before the bankruptcy court may not appeal an order of the bankruptcy court." *In re Popkin & Stern*, 266 B.R. 146, 152 (B.A.P. 8th Cir. 2001), *vacated* 47 Fed. App'x 785 (8th Cir. 2002) (subsequent events had made the appeal moot). Andrew is not a named party in any of the underlying actions, and he never moved to intervene in any of those actions. Consequently, Andrew only has standing in this case if he is a "person aggrieved" – that is, if he was "directly and adversely affected **pecuniarily** by the order." *In re Marlar*, 252 B.R. at 748 (emphasis added).

In 2006, the Bankruptcy Court held that only the trustees had an interest in 875 Laurel "with a slight possibility of [Andrew] having an interest in a portion of the net proceeds of the sale of the property . . . ." *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694, slip op. at 9 (Bankr. D. Minn. Jan. 4, 2006). More specifically, the court noted **"The child's interest, if the deed is not avoided, is as a tenant in common, and no protected possessory interest would be implicated by sale of the property."** *Id.* (emphasis added). This order was affirmed.[4]

Because the courts in this district have already determined that Andrew has no **possessory** interest in 875 Laurel, the Court finds that Andrew could not be affected

---

[4] This order was affirmed by Judge Schiltz, *Stephens v. Jensen-Carter*, Nos. 06-693 and 06-2327, 2007 WL 2885813 (D. Minn. Sept. 27, 2007), and the Eighth Circuit, *Stephens v. Hedback*, 321 Fed. App'x 536 (8th Cir. Apr. 21, 2009).

**pecuniarily** by the Bankruptcy Court's August 31, 2011 eviction order – the order that he appeals.[5] Andrew, therefore, lacks standing, and his claims will be dismissed.

## III.   BANKRUPTCY COURT'S SUBJECT MATTER JURISDICTION

### A.   Bankruptcy Court's Authority

Stephens argues that the Bankruptcy Court did not have the authority to either issue final orders or to order an eviction.  As outlined below, 28 U.S.C. § 157 supplied the Bankruptcy Court with the power to issue final orders, including an order for eviction.

#### 1.   Power to Issue Final Orders

Stephens first contends that the Bankruptcy Court did not have the authority to issue final orders.  Pursuant to 28 U.S.C. § 157(b)(1), "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . ." Core proceedings include "matters concerning the administration of the estate;" "orders to turn over property of the estate;" "proceedings to determine, avoid, or recover fraudulent conveyances;" and "other proceedings affecting the liquidation of the assets of the estate . . . ." *Id.* (b)(2)(A, E, H, O).

Stephens argues that Jensen-Carter's turnover claim pursuant to 11 U.S.C. § 542 is not a core claim.  This argument is inconsistent with the statutory text.  28 U.S.C.

---

[5] In contrast, Andrew was possibly pecuniarily affected by the Bankruptcy Court's 2009 order approving the settlement between the two trustees. *In re Stephens, In re Alexander*, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Dec. 17, 2009).  He did not timely appeal that order.

§ 157(b)(2) (enumerating core claims, including "turn over" of "property of the estate"). The cases cited by Stephens to support the contention that the pertinent claims are not core claims are inapposite.[6]

Furthermore, Stephens's argument that Judge Magnuson merely referred the cases to the Bankruptcy Court for a report and recommendation is incorrect. In his order, Judge Magnuson referred the complaints to the relevant bankruptcy proceedings and **closed** the district court case. *Stephens v. Jensen-Carter*, Nos. 01-0633, 05-0033, 2005 WL 852446, at *9 (D. Minn. Apr. 11, 2005). Judge Schiltz reaffirmed Judge Magnuson two years later when he said "the Debtors have no further business in this Court . . . ." *Stephens v. Jensen-Carter*, Nos. 06-0693, 06-2327, 2007 WL 2885813, at *6 (D. Minn. Sept. 27, 2007); *see also Stephens v. Jensen Carter*, Nos. 06-0693, 06-2327 (D. Minn. Dec. 18, 2009) (same). Nothing in the opinions issued by this Court suggests that it referred the claims to the Bankruptcy Court for a report and recommendation. The Court concludes that the claims in controversy are specifically enumerated as core proceedings

---

[6] For example, in *In re Galluci*, the Court held that the debtor had never had an interest in the property being turned over; the property had been turned over to the trustee by a third party. 931 F.2d 738, 741-42 (11th Cir. 1991). In contrast, here, both debtors assert an interest in 875 Laurel. The brief also cites to *Bayless v. Crabtree Through Adams*, 108 B.R. 299, 302 (W.D. Okla. 1989), as "ruling that an adversary proceeding to turn over property transferred to the debtor's children was a noncore proceeding in Trustee's turnover action." (Appellate Brief of Georgina Y. Stephens and Andrew Will Alexander at 9, No. 11-3459, Docket No. 4 [hereinafter Second Opening Brief "SOB"].) In fact, that court upheld the Bankruptcy Judge's determination that the action was a core proceeding and held he had properly exercised jurisdiction. *Bayless*, 108 B.R. at 303-304.

by 28 U.S.C § 157(b)(2) and, consequently, the Bankruptcy Court had jurisdiction to issue final orders under 28 U.S.C § 157(b)(1).

### 2. Power to Order Eviction

Stephens also contends that the Bankruptcy Court did not have the authority to order an eviction because eviction actions are governed by Minn. Stat. §§ 504B.281 *et seq*. Stephens does not identify anything in Minnesota's statutes giving the state exclusive jurisdiction over eviction. Further, 28 U.S.C. § 157(b)(1) gives Bankruptcy Court judges the authority to "enter appropriate orders and judgments . . . ." *See also* 11 U.S.C. § 105(a) ("The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). Persuasive authority also exists to support the proposition that a Bankruptcy Court may order an eviction.[7] *See, e.g.*, *In re Searles*, 70 B.R. 266, 272-73 (D. R.I. 1987) ("By evicting persons from property that passed to a creditor pursuant to a Consent Order, the Bankruptcy Court simply gave effect to its own prior exercise of authority.").

In the alternative, Stephens argues that the Court did not have the authority to order an eviction on August 31, 2011 because no case or controversy existed after the Bankruptcy Court's 2009 order, *In re Stephens, In re Alexander*, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Dec. 17, 2009), adopting the estates' stipulation of settlement. Because Stephens – and not the trustees – still possessed the house, the 2011 order was

---

[7] The Court reviewed the cases cited by Stephens and found them inapplicable.

necessary to carry out the Bankruptcy Court's prior orders. The Court concludes that the Bankruptcy Court had jurisdiction and authority to order an eviction because its order was necessary to give effect to its earlier orders.

B.  **Section 549 Claim**

Stephens also argues that Jensen-Carter's 11 U.S.C. § 549 claim was time-barred,[8] and that the Bankruptcy Court therefore lacked subject matter jurisdiction. Section 549(a)(1) permits a trustee to "avoid a transfer of property of the estate . . . that occurs after the commencement of the estate." Because the August 31, 2011 order does not address the § 549 claim, presumably Stephens is either attempting to appeal an earlier order of the Bankruptcy Court[9] or is asking this Court to determine whether Andrew has an interest in a portion of the net proceeds of the sale of the property as a result of the quitclaim deed recorded in 2003.[10] In either case, because no

---

[8] Stephens appears to argue that Jensen-Carter must have avoided the quitclaim because Alexander's estate was given some rights to the proceeds from the sale of 875 Laurel in the 2009 settlement between the estates. **If** the quitclaim deed was avoided, Stephens's estate would have had no rights to 875 Laurel. **If** the quitclaim deed was not avoided, Stephens and Andrew would have been tenants in common, with Stephens's interest subject to administration by her bankruptcy estate. *See In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694, slip op. at 8-9 (Bankr. D. Minn. Jan. 4, 2006). In the stipulation of settlement, the validity of the quitclaim deed was not determined, and the estates agreed to divide the proceeds from the sale of 875 Laurel. *In re Stephens,* No. 98-34858, Docket No. 100 (Nov. 20, 2009) (outlining settlement).

[9] Stephens argues that the "bankruptcy judge determined that the 'transfer' of the House occurred before August 17, 1998, thereby Trustee Hedback was a party-in-interest." (SOB at 27.) Stephens does not cite to an order to support this assertion.

[10] The Bankruptcy Court explicitly refused to make this determination in its 2006 judgment. Because of a factual dispute, it denied Jensen-Carter's motion for summary judgment against Hedback. *In re Stephens, In re Alexander*, No. 04-3468, No. 98-34858, No. 98-33694, slip op. at 8, 10 (Bankr. D. Minn. Jan. 4, 2006). In the stipulation of settlement between the estates (adopted by the Bankruptcy Court), no determination was made regarding the validity of

(Footnote continued on next page.)

determination regarding Jensen-Carter's § 549 claim was made, the Court concludes that such a determination could not have stripped the federal courts of subject matter jurisdiction.

### C. Dismissal of Hedback

Stephens argues that "the district court had no subject matter jurisdiction to address the adversary lawsuit, effective December 16, 2004" because, she contends, filing of the adversary lawsuit "terminates all putative relief granted in favor of Hedback, as a matter of law." (Appellate Brief of Georgina Y. Stephens and Andrew Will Alexander at 31, No. 11-3459, Docket No. 4 [hereinafter Second Opening Brief "SOB"][11]  Stephens also notes that Hedback "failed to defend the 8/31/11 Judgment, including failing to file responses to Appellants' objections and/or ha[s] otherwise failed to participate in this proceeding. . . . Such failures by Hedback constitute a waiver." (SOB at 31 (citing, oddly, to *United States v. Olano*, 507 U.S. 725, 733 (1993) (defining waiver in a criminal context).)).  That the court may construe a failure to respond to a motion as non-opposition or as an admission that the motion is meritorious does not mean that the court must grant the motion as a matter of right.  *See* 56 Am. Jur. 2d Motions § 28 (2012); *see also* Minn. Local R. 7.1(e).  Because Hedback responded to the first appeal of the August

--- 

(Footnote continued.)

the quitclaim deed; rather, the estates merely agreed to divide the proceeds from the sale of 875 Laurel. *In re Stephens, In re Alexander*, No. 98-34858, No. 98-33694 (Bankr. D. Minn. Dec. 17, 2009); *In re Stephens*, No. 98-34858, Docket No. 100 (Nov. 20, 2009) (outlining settlement).

[11] Stephens appears, in part, to be making the same arguments addressed – and dismissed – by Judge Magnuson in his 2005 order.  *Stephens v. Jensen-Carter*, Nos. 01-633 and 05-33, 2005 WL 852446, at *7-8 (D. Minn. Apr. 11, 2005) (Magnuson, J.) (addressing challenges to Hedback as a party).

31, 2011 order and attended the hearing, the Court finds that he adequately contested the appeal.  Moreover, because Hedback has long been a party with a sufficient interest in this litigation (including its several appeals),[12] the Court refuses to summarily dismiss Hedback's claims.

## IV.   LAW OF THE CASE

Each party argues that some theory of estoppel supports his or her position, but the Court finds that the substance of this appeal is governed by the law-of-the-case doctrine.  The law-of-the-case doctrine is a means to prevent the relitigation of a settled issue in a case.  *United States v. Bartash*, 69 F.3d 864, 866 (8th Cir. 1995).  "The doctrine 'requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.'"  *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008) (citing *Bartash*, 69 F.3d at 866).  "The doctrine applies to decisions made by appellate courts and final decisions made by district courts that have not been appealed."  *Id.*  Because the courts in this district have previously adjudicated Stephens's *Rooker-Feldman* claims and the extent of her interest in 875 Laurel, the Court finds that further analysis of these claims would be improper.

---

[12] *See Stephens v. Jensen-Carter*, Nos. 01-633 and 05-33, 2005 WL 852446, at *8 (D. Minn. Apr. 11, 2005) (Magnuson, J.).

### A. Application of the *Rooker-Feldman* Doctrine

Stephens argues that the Bankruptcy Court lacked jurisdiction to order an eviction because an eviction would violate the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine states that lower federal courts lack subject matter jurisdiction to review state court judicial decisions. *Prince v. Ark. Bd. of Exam'rs in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004). The federal courts have repeatedly rejected the argument that *Rooker-Feldman* divests the federal court of jurisdiction to deprive Stephens of 875 Laurel. *Stephens v. Jensen-Carter*, Nos. 06-693 and 06-2327, 2007 WL 2885813, at *3 (D. Minn. Sept. 27, 2007) (Schiltz, J.), *aff'd*, *Stephens v. Hedback*, 321 Fed. App'x 536 (8th Cir. Apr. 21, 2009).[13] Therefore, the Court concludes that the law of the case doctrine bars reconsideration of Stephens's arguments based on the *Rooker-Feldman* doctrine, and reaffirms that the doctrine does not strip the federal courts, including the Bankruptcy Court, of jurisdiction.

---

[13] The Court notes that the Bankruptcy Court's order of Stephens's eviction may be inconsistent with the state court order finding that Stephens had a possessory interest in the property, *Jensen-Carter v. Stephens*, No. C8-01-4968 (Minn. Dist. Ct. Jan. 27, 2004), and Judge Magnuson's order which suggested that an eviction order might violate the *Rooker-Feldman* doctrine, *Stephens v. Jensen-Carter*, Nos. 01-633 and 05-33, 2005 WL 852446, at *5 (D. Minn. Apr. 11, 2005). Nevertheless, subsequent final decisions holding that the *Rooker-Feldman* doctrine does not limit the scope of federal courts' jurisdiction are binding on this Court. *See Bartash*, 69 F.3d at 866. Stephens has not introduced different evidence or identified how the prior decisions are "clearly erroneous." *See id.* ("Under this doctrine, 'a decision in a prior appeal is followed in later proceedings unless a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice.'") (quoting *United States v. Callaway*, 972 F.3d 904, 905 (8th Cir. 1992)).

### B. Stephens's Possessory Interest in 875 Laurel

Stephens argues that because the state court found that Stephens had a homestead interest in 875 Laurel and that she was entitled to immediate possession, the law-of-the-case doctrine (or some other res judicata doctrine) bars relitigation of her right to possession. In fact, because every federal court to address the case has found that Stephens has no interest in 875 Laurel, the law-of-the-case doctrine confirms Stephens has **no** right to possession.[14] *See, e.g.*, *In re Stephens*, 425 B.R. 529, 533 (B.A.P. 8th Cir. 2010) ("[T]he Bankruptcy Court, the District Court, and the United States Court of Appeals for the Eighth Circuit have very clearly, and finally, determined that **Ms. Stephens has no interest in the Laurel property**.") (emphasis in original). The Court finds that the Bankruptcy Court's order was consistent with these prior decisions, and that order will therefore be affirmed.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the August 31, 2011 order of the Bankruptcy Court is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 24, 2012　　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[14] The Court further notes – but does not decide – that because Stephens has litigated these issues so many times in so many forums, the doctrines of either claim or issue preclusion may also bar reconsideration of the issues Stephens raises on appeal.